**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| DANIELLE PISARZ, on behalf of himself and all others similarly situated, | : : : : | Civ. Action No.16-4552 (FLW) |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| GC SERVICES LIMITED PARTNERSHIP and JOHN DOES 1-25, | : : : : | |
| Defendants. | : : | |

---

**WOLFSON, District Judge**:

Plaintiff Danielle Pisarz ("Plaintiff") filed this suit against Defendant GC Services LP ("Defendant"), a collection agency, for violating the Fair Debt Collections Practices Act ("FDCPA" or the "Act") by making communications intended to harass, deceive and mislead Plaintiff in connection with its attempt to collect a debt.  In lieu of an answer, Defendant moves to dismiss Plaintiff's Complaint on standing grounds, as well as for failure to state a claim.  For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.  Count I of the Complaint is dismissed, however, Defendant's motion to dismiss Count II is denied.

## BACKGROUND

On or around July 10, 2016, Plaintiff alleges that Defendant began calling Plaintiff in an attempt to collect a consumer debt.  According to Plaintiff, the debt arose out of a transaction that is "primarily for personal, family or household purposes."  Compl., ¶ 18.  Because the debt was allegedly past due, Defendant called Plaintiff's cellular phone number and left a voicemail.  *Id.* at ¶ 22.  The voicemail stated, "[t]his message is for Danielle Pisarz, my name is Al Lease.  Please return my call at your earliest convenience at 877-551-9781.  Use your reference number 104338.  Our hours are 11:00 am to 10:00 pm."  *Id.* at ¶ 23.  According to Plaintiff, she does not recall receiving any calls from Defendant prior to the July 10, 2016 call.  *Id.* at ¶ 24.  Plaintiff further alleges that upon listening to the voicemail message, she called the toll-free number and "was told that the call was from the Defendant, a debt collector attempting to collect a debt."  *Id.* at ¶ 25.  Plaintiff avers that this was the first time Defendant identified to Plaintiff that it was a debt collector.

Thereafter, Plaintiff filed her two-count Complaint alleging that the failure to disclose in the voicemail that the call was from a debt collector, Defendant "caused the Plaintiff a real harm, that the Plaintiff would not know that she was communicating with a debt collector, and that any information the Plaintiff provided would be used for that purpose."  *Id.* at ¶ 27.  In that connection, Plaintiff claims that Defendant violated § 1692d(6) because it engaged in conduct, *i.e.*, by failing to disclose its identity, that was calculated to "harass, oppress, or abuse" Plaintiff while collecting a debt.  *Id.* at ¶ 31.  In addition,

based on the same conduct, Plaintiff alleges that Defendant violated § 1692e by engaging in "false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* at ¶ 35.

In the instant matter, Defendant moves to dismiss Plaintiff's Complaint in its entirety for lack of standing in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  In the alternative, Defendant argues that Plaintiff has failed to state a claim under the FDCPA.

## DISCUSSION

### I.   Standard of Review

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief").  In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that

is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Plaintiff need not meet any particular "probability requirement" but must show that there is "more than a sheer possibility that the defendant has act unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  Moreover, "[c]ontext matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232 (citation omitted).

When presented with a motion to dismiss, the court should engage in a two-part analysis. *Fowler*, 578 F.3d at 210.  First, the court must separate the factual and legal elements of each claim. *Id.*  It "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 678).  Second, the court must determine whether the facts alleged are "sufficient to show that the plaintiff has 'a plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  In other words, for the plaintiff to prevail, the "complaint must do more than allege

4

the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234-35); *see Covington v. International Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' The pleading standard 'is not akin to a 'probability requirement,' to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (citations omitted)).

## II.  Standing under *Spokeo*

Defendant argues that Plaintiff lacks standing to bring her FDCPA claims because her alleged statutory harm is not sufficiently concrete and particularized to satisfy an injury-in-fact under *Spokeo*. I do not agree.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Indeed, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo*, 136 S. Ct. at 1547. "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alterations original).

To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting

*Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (internal quotations and citations omitted).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."  *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (footnote omitted).

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical."  *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted).  A harm is "concrete" only "if it is '*de facto*'; that is, it must actually exist"—it cannot be merely "abstract."  *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548).  Moreover, a harm need not be tangible, to be "concrete."  To determine whether an "intangible" harm constitutes an injury-in-fact sufficient for standing purposes, consideration should focus on whether the purported injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Spokeo*, 136 S. Ct. at 1549 (citation omitted).  In that connection, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)) (alteration original).

Importantly, in the context of a statutory violation, allegations of a "bare procedural violation [under the statute], divorced from any concrete [or substantive] harm" cannot satisfy the injury-in-fact requirement. *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Stated differently, not every "bare" violation of a right granted by a statute is inherently injurious. Rather, such a violation must result in a "concrete" harm. That requirement remains in circumstances where a statute "purports to authorize [a] person to sue to vindicate [a statutory procedural] right." *Id.*; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").

Thus, standing based on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural. A "procedural right" is defined as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." *In re Michaels Stores, Inc.*, No. 14-7563, 2017 U.S. Dist. LEXIS 9310, at *17 n.12 (D.N.J. Jan. 24, 2017) (quoting *Landrum v. Blackbird Enters., LLC*, No.16-0374, 2016 U.S. Dist. LEXIS 143044, at *3 (S.D. Tex. Oct. 3, 2016)) (internal citations omitted) (alteration original). On the other hand, a "substantive right" is "[a] right that can be protected or enforced by law; a right of substance rather than form." *Id.* (citing *Landrum*, 2016 U.S. Dist. LEXIS 143044, at *3) (internal citations omitted)

(alteration original).  "To the extent that a violation of the procedural right has no effect on the substantive right, the bare procedural violation does not cause an injury of the sort that, alone, would support standing."[1]  *Id.* (citing *Landrum*, 2016 U.S. Dist. LEXIS 143044, at *3).

While the Third Circuit has not addressed whether a violation of the FDCPA can give rise to a concrete injury, post-*Spokeo*, courts in this district have considered that question.  *See, e.g.*, *Thomas v. Youderian*, No. 16-1408, 2017 U.S. Dist. LEXIS 16585, at *20–21 (D.N.J. Feb. 3, 2017) (finding concrete injury where the plaintiff allegedly received a collection letter notifying him that a small convenience fee would be charged for payments made by credit card); *Carney v. Goldman*, No. 15-260, 2016 U.S. Dist. LEXIS 177087, at *14 (D.N.J. Dec. 22, 2016) (holding that the plaintiffs satisfied the concreteness requirement of

---

[1]    In *Landrum*, the court provided an example to clarify the sometimes-confusing difference between a procedural and substantive violation:

> Consider a hypothetical statute requiring building managers to notify occupants in the event of a fire in a timely manner via a loudspeaker using specific language. Now imagine that, during a fire, a manager effectively communicates a warning to an occupant in a timely manner but does so in person, after which the occupant escapes unharmed. The occupant was subjected to a bare, procedural violation. If, however, another occupant was never warned but smelled smoke and safely exited the building, the latter occupant was subject to a substantive violation of his right to be timely notified, albeit without independent, "tangible" harm. In the latter case, a statutory remedy would be appropriate. In the former case, only the manner in which the warning was to be delivered (*i.e.*, the procedure) failed to meet statutory guidelines. The underlying right, the right to be timely notified in the event of a fire, was honored.

*Landrum*, 2016 U.S. Dist. LEXIS 143044, at *9–10.

standing, when they alleged that the debt collector misstated the amount of debt owed in their collection letters); *Blaha v. First Nat'l Collection Bureau, Inc.*, No. 16-2791, 2016 U.S. Dist. LEXIS 157575, at *19 (D.N.J. Nov. 10, 2016) (concluding that the allegation that the debt collector misrepresented the legal status of the debt in the collection letter is sufficiently concrete to confer Article III standing); *cf. Benali v. AFNI, Inc.*, No. 15-3605, 2017 U.S. Dist. LEXIS 783, at *16 (D.N.J. Jan. 4, 2017) (holding, on a motion for summary judgment, that the plaintiff did not establish a concrete injury because, based on his testimony that he knew the debt was not actually his, there was no risk that plaintiff would have paid the convenience fee).

Based on this Court's survey of various district-court decisions in this circuit, following *Spokeo*, constitutional standing has been discussed in two different FDCPA contexts: (i) violations of § 1692e for false, deceptive and misleading statements; and (ii) violations of § 1692f for the use of unfair and unconscionable means in collecting a debt.  With respect to violations of § 1692e, courts "trend in favor of finding concrete injury under the FDCPA where the amount or validity of the debt has been misstated."  *Thomas*, 2017 U.S. Dist. LEXIS 16585, at *16.  Shortly after the Supreme Court decided *Spokeo*, the court in *Blaha* concluded that the plaintiff had established a concrete injury-in-fact, where she alleged that the defendant sent a collection letter to the plaintiff with a settlement offer on a time barred debt, but the defendant failed to disclose the legal status of that debt.  *See Blaha*, 2016 U.S. Dist. LEXIS 157575, at *22-24. The court reasoned that Congress enacted the FDCPA "to eliminate abusive debt

collection practices and to promote further action to protect consumers against debt collection abuses," and that the allegation that the defendant made false and misleading statements to plaintiff about the status of the debt "is precisely [the harm] that . . . the statute was intended to guard against."  *Id.* at *22–23. Similarly, in *Carney*, the plaintiff alleged that the defendant violated the FDCPA when it sent collection letters to the plaintiff containing false and misleading statements about the amount of debt owed.  2016 U.S. Dist. LEXIS 177087, at *13-16.   The court held that, because "[t]he FDCPA unambiguously grants recipients of debt-collection letters . . . a right to be free from abusive collection practices," including the use of false and misleading representations, the plaintiff sufficiently alleged the concreteness requirement under Article III.  *Id.* at *15-16.

In connection with violations of § 1692f, which prohibits the use of unfair and unconscionable debt collection practices, courts in this district have only addressed the issue whether a collection letter that notifies the debtor that he or she will be assessed a convenience charge for paying the debt with a credit card constitutes a concrete injury.  *See Benali*, 2017 U.S. Dist. LEXIS 783, at *16-17; *Thomas*, 2017 U.S. Dist. LEXIS 16585, at *17-21.  In that regard, the *Thomas* court has found that based on the alleged deceptive language in a collection letter, the plaintiff was "at risk of being misled into paying the . . . [c]onvenience [f]ee" or, in the alternative, "at risk of forgoing the convenience of paying the bill on credit (or, I suppose, at risk of giving up on paying for it for lack of ready money)."  2017 U.S. Dist. LEXIS 16585, at *19-20.  Although the risk of harm was slight, the court found that it was still present, since the "[d]eprivation of

10

the right to be free of false or deceptive collection information, with the attendant risk of economic injury, is an interest recognized by the [FDCPA], and one reasonably rooted in the traditions of the common law." *Id.* at * 20.

In fact, "[s]ince *Spokeo* was decided, the overwhelming majority of courts that have faced Article III standing challenges in FDCPA cases . . . have determined that a violation of the FDCPA produces a 'concrete injury.' " *Sullivan v. Allied Interstate, LLC*, No. 06-203, 2016 WL 7187507, at *5 (W.D. Pa. Oct. 18, 2016), report and recommendation adopted, No. CV 16-203, 2016 WL 7189859 (W.D. Pa. Dec. 9, 2016) (citing *Dittig v. Elevate Recoveries*, LLC, No. 16-1155, 2016 U.S. Dist. LEXIS 112991, at *6 n.1 (W.D. Pa. Aug. 24, 2016) (finding a concrete injury where plaintiff alleged defendant violated the FDCPA by sending him a collection notice containing a "settlement offer" for a time-barred debt); *Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1237 (D. Colo. July 29, 2016) (holding that plaintiff alleged a concrete injury sufficient to confer Article III standing where the defendant allegedly gave plaintiff false information regarding her debt and also allegedly supplied information to creditors regarding the debt without informing the creditors that the debt was disputed); *McCamis v. Servis One, Inc.*, No. 16-1130, 2016 U.S. Dist. LEXIS 99492, at *4–5 (M.D. Fla. July 29, 2016) (finding a concrete injury where plaintiff's rights under the FDCPA were allegedly violated when a creditor continued to contact plaintiff in an attempt to collect a debt that was previously discharged in bankruptcy); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-803, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016) (finding a concrete injury where plaintiff's only alleged harm stemmed from the

defendant's failure to disclose that certain of plaintiff's rights under the FDCPA had to be exercised in writing)); *Quinn v. Specialized Loan Servicing, LLC*, No. 16-2021, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016) (finding that the failure to provide a debtor with information she was entitled to under the FDCPA is not a mere procedural violation of the statute).

Here, Plaintiff alleges that Defendant violated §§ 1692d and 1692e of the FDCPA by failing to provide the statutorily required disclosures, *i.e.*, that Defendant is a debt collector attempting to collect a debt.  In this Court's view, such a harm is real and concrete, sufficient to meet Article III standing.  Contrary to Defendant's contention, Plaintiff's alleged harm is not a mere procedural violation of the FDCPA.

Congress enacted the Act in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a).  It explained that the purpose of the Act was not only to eliminate abusive debt practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).  To curb disclosure-related abuses, relevant to this case, § 1692e expressly mandates debt collectors to disclose in the initial written or oral communication with the consumer that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . ."  15 U.S.C. § 1692e(11).  Furthermore, the Act also requires a debt collector to disclose the caller's identity when placing telephone calls to consumers.   15 U.S.C. § 1692d(6).  Importantly, the

Legislature provided consumers a private cause of action against debt collectors who fail to comply with the strictures of the Act.  *See* 15 U.S.C. § 1692k.

 With respect to information injury, the Supreme Court has long held that "a plaintiff suffers an 'injury in fact' when [that] plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."  *FEC v. Akins*, 524 U.S. 11, 21 (1998) (citing *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)).[2]  *Spokeo* reconfirmed this principle.  *See Nickelodeon*, 827 F.3d at 273-74 ("[U]nlawful denial of access to information [statutorily] subject to disclosure" alone sufficiently constitutes injury-in-fact to confer Article III standing) (citing *Spokeo*, 136 S. Ct. at 1549-50).

In the context of an information injury under the FDCPA, post-*Spokeo*, the Eleventh Circuit, in *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016), held that an allegation of an omission of a required disclosure under the FDCPA is a concrete and particularized injury.  *Id.* at 995.  In that case, a collection agency mailed a collection letter to the plaintiff which failed to include the disclosures required by § 1692e(11).  *Id.* at 994.  The court found that such a violation conferred the plaintiff standing to sue because "the invasion of [the plaintiff's] right to receive the disclosures is not hypothetical or uncertain; [the plaintiff] did not receive information to which she alleges she was entitled."  *Id.*

---

[2]     In *Akins,* a group of voters challenged the Federal Election Committee's refusal to require the disclosure of information allegedly mandated by the Federal Election Campaign Act of 1971. 524 U.S. at 20-25. In *Public Citizen*, two advocacy organizations sought information allegedly subject to disclosure under the Federal Advisory Committee Act. 491 U.S. at 447. The Court found that plaintiffs had standing to sue in both cases.

The court advised that although such an informational injury may not have resulted in tangible economic or physical harm, "the Supreme Court has made clear [that] an injury need not be tangible to be concrete." *Id.* at 995.

In this case, the same result obtains.  Plaintiff's alleged injury stems from Defendant's failure to disclose its identity in a voice message left on Plaintiff's cellphone.  Plaintiff alleges that such a failure to disclose is a violation of her statutory rights under the FDCPA.  Indeed, while this alleged injury may not have resulted in any economic or physical harm, Plaintiff, nonetheless, suffered a concert injury because the alleged deprivation of Plaintiff's right to receive the statutorily mandated disclosures is "not hypothetical" or "conjectural."  Rather, it is a real harm that Congress has elevated to the status of a legally cognizable injury through the FDCPA.  Accordingly, Plaintiff's alleged injury satisfies Article III standing.

## III.   FDCPA Claims

### A.    § 1692d(6)

Having determined that Plaintiff has standing to sue, the Court addresses Defendant's argument that Plaintiff's FDCPA claims cannot withstand Rule 12(b)(6) scrutiny.  As to the § 1692d claim in Count I of the Complaint, Defendant argues that 1) Defendant's agent was under no obligation under the Act to disclose in a voicemail that he was a debt collector; and 2) a single voicemail is not sufficient to state a § 1692d(6) violation.

In order to state a claim under the FDCPA, "a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's

14

challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir. 2014).

Here, the parties' dispute centers on the fourth element—whether the defendant has violated the Act.  Section 1692d provides:

> A debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.  Although there is no Third Circuit case addressing the necessity for a debt collector to identify itself in either a voicemail or answering machine message under this FDCPA provision, numerous district courts have determined that a debt collector's failure to reveal itself as a collection agency when leaving messages violates the FDCPA.  *Gryzbowski v. I.C. Sys.*, 691 F. Supp. 2d 618, 623 (M.D. Pa 2010) (citing  *Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1352–53 (N.D. Ga. 2008), *aff'd* 584 F.3d 1350 (11th Cir. 2009); *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005); *Masciarelli v. Boudreau & Assocs.*, 529 F. Supp. 2d 183, 185 (D. Mass. 2007); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006); *Mark v. J.C. Christensen & Assocs., Inc.*, No. 09–100, 2009 WL 2407700, at *4 (D. Minn. 2009).  "[M]eaningful disclosure" requires a debt collector to "disclose enough information so as not to mislead the recipient as to the purpose

15

of the call." *Hosseinzadeh*, 387 F. Supp. 2d at 1112; *Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1339 (M.D. Fla. 2011); *Edwards*, 586 F. Supp. 2d at 1352-53; *Masciarelli*, 529 F. Supp. 2d at 185; *Foti*, 424 F. Supp. 2d at 669; *Mark*, 2009 WL 2407700, at *4; *Baker v. Allstate Fin. Servs.*, 554 F. Supp. 2d 945, 949 (D. Minn. 2008); *Torres v. ProCollect, Inc.*, 865 F. Supp. 2d 1103, 1105 (D. Colo. 2012); *Valencia v. Affiliated Grp., Inc.*, No. 07-61381, 2008 WL 4372895, at *3 (S.D. Fla. Sept. 24, 2008); *Wright v. Credit Bureau of Georgia, Inc.*, 548 F. Supp. 591, 597 (N.D. Ga. 1982).

Here, the voicemail that Defendant's agent left on Plaintiff's cell phone allegedly contains the following message: "[t]his message is for Danielle Pisarz, my name is Al Lease.  Please return my call at your earliest convenience at 877-551-9781.  Use your reference number 104338.  Our hours are 11:00 am to 10:00 pm."  Compl., ¶ 23.  As alleged, the agent, Al Lease, neither identified himself as a debt collector, nor that he was calling in connection with an attempt to collect a debt.  Clearly, it would not be readily apparent to Plaintiff that the agent is a debt collector, or that the call was placed for the sole purpose of collecting on a debt.  Moreover, while the agent cited a Reference Number, the voicemail provided no other indications that the message was left by a debt collector.  Hence, "this is not a case where the fact that the communication is from a debt collector would be apparent even to the least sophisticated consumer."  *See Foti*, 424 F. Supp. 2d at 669 (citations omitted).

Nonetheless, Defendant, relying on *Wattie-Bey v. Modern Recovery Sols.*, No. 14-1769, 2016 U.S. Dist. LEXIS 31765 (M.D. Pa. Mar. 10, 2016), argues that

its agent was under no obligation to reveal his identity or the purpose of the call so long as a return phone number was provided.  However, *Wattie-Bey* does not stand for that legal proposition.  In *Wattie-Bey*, the plaintiff received two calls from an agent of a collection agency, who immediately hung up after making the calls, without connecting to the plaintiff or leaving a voicemail.  *Id.* at *3-4.  The court found that since the collection agency did not portray a false Caller ID number, there could be no claim that there was a failure to provide meaningful identification.  *Id.* at *16-17.  *Wattie-Bey* is clearly distinguishable from the instant case: while the collection agency, in *Wattie-Bey*, made calls to the consumer, it never left a voicemail or otherwise connected with that consumer. Indeed, although a debt collector is not required to leave a voicemail message under the FDCPA, *see Hicks v. America's Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 513, 516 (N.D. Ohio 2011), if a message is left, the collector must meaningfully disclose its identity and the nature of its business in the message. *See Fry v. Berks Credit & Collections, Inc.,* No. 11 -281, 2011 WL 6057781, at *4 (N.D. Ohio Nov. 17, 2011), *report and recommendation adopted,* No. 11-281, 2011 WL 6057695 (N.D. Ohio Dec. 6, 2011) ("Defendant's failure to leave voicemails, as a matter of law, does not violate § 1692d(6).  If Defendant had left voicemails while still not disclosing its identity, the result could be different."); *Jiminez v. Accounts Receivable Mgmt., Inc.*, No. 09-9070, 2010 WL 5829206, at *6 (C.D. Cal. Nov. 15, 2010).

Based on the foregoing, I find that, as alleged, Defendant's voicemail did not provide "meaningful disclosure" to Plaintiff about its identity.

17

But, that finding does not end the Court's inquiry; the Court must also consider whether a ***single*** voicemail can sustain a § 1692d(6) violation.  I start with the language of section 1692d(6), which prohibits "the placement of telephone *calls* without meaningful disclosure."  15 U.S.C. § 1692d(6) (emphasis added).  Defendant contends that because the statute specifically uses the plural form of "call," the legislature intended debt collectors to make more than one call in order to state a violation under § 1692d(6).  On the other hand, Plaintiff argues that nowhere in the statute does it require that a collection agency must make at least two calls without meaningful disclosure before a debtor has a cause of action under the Act.  In so arguing, Plaintiff maintains that a canon of statutory construction provides that the singular generally includes the plural, and vice versa.

Defendant's position, here, is supported by the weight of the authorities. Numerous district courts around the country that have confronted this particular issue have all consistently held that the use of the plural "calls" in § 1692d(6), means that a debt collector must make more than one call to violate the section.  *See Hagler v. Credit World Servs.,* No. 13-2452, 2014 U.S. Dist. LEXIS 139241, at *7-8 (D. Kan. Oct. 1, 2014)*; Thorne v. Accounts Receivable Mgmt., Inc.*, No. 11-22290, 2012 U.S. Dist. LEXIS 109165, at *22 (S.D. Fla. Jul. 24, 2012); *Jordan v. ER Solutions, Inc.*, 900 F. Supp. 2d 1323, 1326 (S.D. Fla. 2012); *Sanford v. Portfolio Recovery Assocs., LLC*, No. 12-11526, 2013 WL 3798285, at *19 (E.D. Mich. July 22, 2013); *Garza v. MRS BPO, LLC*, No. 12-1057, 2012 U.S. Dist. LEXIS 115033, at *5-6 (S.D. Tex. August 15, 2012); *Pollock*

18

*v. GC Servs. Ltd P'ship - Del.*, No. 13-13652, 2014 U.S. Dist. LEXIS 171854, at *4-5 (E.D. Mich. Dec. 12, 2014); *Sampaio v. I.C. Sys., Inc.*, No. 09-21689, 2009 U.S. Dist. LEXIS 132083, at *3 (S.D. Fla. Nov. 6. 2009); *Brailey v. F.H. Cann & Assocs.*, No. 14-0754, 2014 U.S. Dist. LEXIS 180310, at *12 (W.D. La Dec. 5, 2014). Tellingly, Plaintiff has not cited to any case law supporting her contrary position.

After reviewing the text of § 1692d, the Court finds the holdings of the district court cases cited above persuasive, and concludes that a § 1692d(6) violation requires more than one phone call. Like those courts, I am mindful that one of the canons of statutory construction provides that the singular generally includes the plural. "But the proposition that many includes only one is not as logically inevitable as the proposition that one includes multiple ones, so its application is much more subject to context and to contradiction by other canons." *Hagler*, 2014 U.S. Dist. LEXIS 139241, at *8 (citing Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 129-130 (2012)). And, looking to the context of § 1692d, the more reasonable interpretation of "calls" is its plain and ordinary meaning — more than one call. *See Id.* ("the context of § 1692d suggests that a debt collector must make more than one phone call without disclosing his identity to violate § 1692d(6)").

Section 1692d is titled "Harassment or abuse." This provision intends to punish a debt collector who engages "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. The legislature set forth a non-exclusive

list of six types of conduct that could be construed as harassing, oppressive or abusive:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts . . . .
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) [T]he placement of telephone calls without meaningful disclosure of the caller's identity.

*See* 15 U.S.C. § 1692d(1)-(6).

Based on this structure, the court in *Hagler* pointedly explained:

[§ 1682d(1)-(6)] appears to be divided between those subsections requiring a single act and those requiring multiple acts. Actions prohibited by the first four subsections are all singular (*e.g.*, the use or threat of violence, the use of obscene language, the publication of a list of consumers), so they require only a single instance of the prohibited action to sustain a violation. In contrast, subsections (5) and (6) are plural—subsection 1692d(5) prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously," so it explicitly contemplates multiple acts (emphasis added). This leads the Court to believe that Congress used the plural form "calls" intentionally. In the context of § 1692d as a whole, the fact that § 1692d(6) refers to the plural "calls" suggests a debt collector must make more than one phone call to violate the section.

2014 U.S. Dist. LEXIS 139241, at *10-11. I find the *Hagler* Court's explanation a logical conclusion. Because it is the repetitive nature of the phone calls,

without any meaningful disclosure, that makes them abusive, harassing or oppressive.  In that regard, I agree that the language of § 1692d as a whole suggests that the use of the plural "calls" requires more than one phone call to violate § 1692d(6).  Accordingly, Defendant's alleged conduct of leaving a single voicemail without meaningful disclosure does not violate § 1692d(6).  Count I of the Complaint is dismissed.

### B.      § 1692e(11)

In Count II, Plaintiff alleges that the failure of Defendant's agent to disclose his identity and the purpose of the call in the voicemail also violates § 1692e(11) of the FDCPA.  Under this section, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Under § 1692e(11), it is a violation to fail "to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and . . . to disclose in subsequent communications that the communication is from a debt collector."  15 U.S.C. § 1692e(11).   The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).

Here, Defendant contends that a message that merely states the agent's name and leaves a call back number on a voicemail[3] cannot be deemed a

---

[3]      Defendant does not argue that a voicemail message cannot be deemed a communication under § 1692d.  Indeed, voicemails are communications that must conform to the disclosure requirements of section 1692e(11). *See e.g.*,

"communication" under the FDCPA, because the message did not convey any information regarding a debt.  While I am not persuaded by Defendant's argument in this regard, I nonetheless note that there is case law to support its position, albeit from out-of-circuit cases.

In *Pollock v. GC Servs. Ltd. P'ship – Del.*, No. 13-13652, 2014 U.S. Dist. LEXIS 171854 (E.D. Mich. Dec. 14, 2014), the defendant debt-collector left a voicemail message leaving the agent's name and a call-back number.  The plaintiff alleged that the defendant's failure to disclose its identity violated § 1692e(11).  The court, there, with little analysis of the law, held that because the representative never conveyed information pertaining to the plaintiff's debt, the voice message did not constitute a "communication" under § 1692e(11).  *Id.* at *3; *see Biggs v. Credit Collections, Inc.*, No. 07-0053, 2007 U.S. Dist. LEXIS 84793 (W.D. Okla. Nov. 15, 2007) (finding, after review of transcript of voicemail messages, that voicemails were not communications because they conveyed no information regarding a debt); *Zortman v. J.C. Christensen & Associates, Inc.*, 870 F. Supp. 2d 694, 704 (D. Minn. 2012).  However, this line of cases represents the minority view among district courts.  *See Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 566 (D.S.C. 2014); *see also Krug v. Focus Receivables Mgmt., LLC*, No. 09-4310, 2010 U.S. Dist. LEXIS 45850, at *8 n.3. (D.N.J. May 11, 2010).

Numerous district courts, including courts in this district, have rejected such a position.  *See Edwards*, 586 F. Supp. 2d at 1359 ("The majority of courts

---

*Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1189 (W.D. Wash. 2011); *Horkey v. JVDB & Associates, Inc.*, 333 F.3d 769, 774 (7th Cir. 2003); *Pasquale v. Law Offices of Nelson & Kennard*, 940 F. Supp. 2d 1151, 1159 (N.D. Cal. 2013).

that have addressed this issue have concluded that messages from a debt collector left on a consumer's voicemail or answering machine requesting that the consumer call a phone number . . . may be considered 'communications' under the FDCPA . . . ."); *e.g.*, *Mark*, 2009 WL 2407700, at *3; *Nicholas v. CMRE Fin. Servs., Inc.*, No. 08-cv-4857, 2010 U.S. Dist. LEXIS 25373, at *8-12 (D.N.J. March 16, 2010); *Krug*, 2010 U.S. Dist. LEXIS 45850, at *5-8; *Wong v. Green Tree Servicing, LLC*, No. 13-7887, 2014 U.S. Dist. LEXIS 124530, at *7-8 (D.N.J. Sep. 5, 2014); *Foti*, 424 F. Supp. 2d at 657; *Inman v. NCO Fin. Sys.*, No. 08-cv-5866, 2009 U.S. Dist. LEXIS 98215, at *8-9 (E.D. Pa. Oct. 21, 2009) ("This Court finds the *Foti* decision to be highly instructive, and therefore adopts its reasoning."); *Wideman v. Monterey Fin. Servs.*, No. 08-1331, 2009 U.S. Dist. LEXIS 38824 at *5-6 (W.D. Pa. May 7, 2009) (citing, among other authorities, *Foti*); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322 (S.D. Fla. 2009) ("Courts generally consider voice mail messages from debt collectors to be 'communications,' even if the messages do not state what the calls are regarding"); *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008) ("messages left on a debtor's answering machine can be considered indirect communications regarding the debt, even if the debt collector fails to expressly mention that the call pertains to collection, payment, deadlines or any other observable characteristics of a collection call.  Any other interpretation would require a claimant to prove, without exception, that the debt collector conveyed direct information about the debt."); *Hosseinzadeh*, 387 F. Supp. 2d at 1116 ("While the messages may not technically mention specific information

23

about a debt or the nature of the call, § 1692a(2) applies to information conveyed 'directly or indirectly.' "); *Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1304 (D. Colo. 2011) (holding that voicemail message in which "Defendant's employee neither identified himself as a debt collector nor articulated that the purpose of the voicemail message was to collect a debt" constituted a communication under the FDCPA).

The majority's view originated from the Southern District of New York's decision in *Foti*.  In *Foti*, the court held that the following recorded telephone message constituted a "communication" under the Act: "Good day, we are calling from NCO Financial Systems regarding a personal business matter that requires your immediate attention.  Please call back 1-866-701-1275 once again please call back, toll-free, 1-866-701-1275, this is not a solicitation." *Foti*, 424 F. Supp. 2d at 654-55.  In so holding, the court first recognized that, consistent with Congress's intent, the FDCPA "should be broadly construed." *Id.* at 655 (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989). The *Foti* court further reasoned that although the message technically did not convey any specific information about the debt, "it is difficult to imagine how the voicemail message is not a communication under the FDCPA" when it "clearly provided some information, even if indirectly, to the intended recipient" and the "obvious purpose of the message was to provide the [consumer] with enough information to entice a return call." *Id.* at 655-56 (footnote omitted).  Indeed,

> the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about

24

> the particular debt being collected. Indeed, a narrow reading of the term "communication" to exclude instances such as the present case where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors [sic] to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold "communication" requirement, merely by not conveying specific information about the debt.

*Krug,* 2010 U.S. Dist. LEXIS 45850, at *5-6 (quoting *Nicholas*, 2010 U.S. Dist. LEXIS 25373, at *9).

I, too, join the majority of courts that have considered this issue. The Third Circuit has repeatedly held that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect . . .," *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013) (citation omitted), and, as such, it is imperative that courts analyze the communication giving rise to the FDCPA claim "from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation marks and citation omitted); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015). Having reviewed the minority line of cases, it is apparent that those decisions have failed to take into account the legislative intent of the FDCPA in narrowly interpreting § 1692e. *See Mark*, 2009 WL 2407700, at *3; *Ramirez*, 567 F. Supp. 2d at 1041-42 (criticizing the minority view as failing to recognize the policy underlying the FDCPA). Rather, rightfully, the majority approach prohibits debt collectors from avoiding liability by sending encrypted and deceptive messages that are otherwise intended to extend communications

25

concerning debt collection.  This is the very conduct that § 1692e was enacted to prevent.

Accordingly, the Court rejects Defendant's argument that the message left on Plaintiff's voicemail was not a "communication" under § 1692e(11) of the FDCPA.  Defendant's motion to dismiss Count II of the Complaint is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.  Count I of the Complaint is dismissed, however, Defendant's motion to dismiss Count II is denied.


DATED: March 24, 2017                    /s/        Freda L. Wolfson
                                         Freda L. Wolfson
                                         United States District Judge